Please call the next case. 109-2281 Roger Romano v. Douglas Burleson Counsel, please. If the court please, Mr. Breka. My name is William Whippold, and I'm the attorney for the plaintiff appellant in this case, J. Roger Romano. And at the end of the argument, and after you've considered the briefs, I'm going to ask this court to reverse the circuit court and remand this case to the commission for a determination of the nature and extent of Mr. Romano's injury. Counsel? Yeah. Before we get into the argument, we've got a little problem with your brief, too. Uh-huh. You have no table of contents for the record on appeal. This is an eight-volume record. I'm sorry? There's no table of contents for the record on appeal. This is an eight-volume record. Who was supposed to do that? I'm sorry. I wasn't aware. Rule. In addition to that, there's no points in authority. There's no issues presented section on this brief. And finally, coming from a guy who's got bad eyesight like me, we don't appreciate single-space briefs. They're supposed to be double-spaced. Yeah. I apologize. Are you able to consider my brief? Well, we didn't strike it and probably should have. Thank you. I appreciate that. I'm going to make this argument brief. I want to make two points. I think the circuit court has handed up to this panel an inconsistent decision. On the one hand, it finds that Mr. Romano, my client, is a traveling employee and that his means of travel is a motor vehicle. Then it goes on to find that it is unforeseeable that he would be injured in a motor vehicle accident. I don't think that you can write a coherent decision which affirms both those findings. Well, let's stop right there. Yeah. Is that necessarily inconsistent? A traveling employee is one who is required to travel away from his employer's premises in order to perform his job. Ostensibly, you know, we'll have to decide it, obviously. I think you can argue the claimant here was a traveling employee, okay? Yeah. Given the nature of his duties. However, even if he's found to be a traveling employee, whether or not the injury arises out of him in the course of the employment is still a different issue. Just because you're a traveling employee doesn't mean you automatically recover because of an accident. Would you agree with that? I would agree with that, but I think the issue here is not the accident, the type of the accident itself, but whether he had engaged in a detour and whether he had returned to the scope of his employment. Isn't that? Well, loosely defined, I suppose that's the case, and that's what you have to hone in on. He had left his official responsibilities. Obviously, if he's going to some board meeting at his store or school board, at that point, he's not on official business, is he? I agree. Okay. So, and then there was testimony that according to his, when they talked to, I guess, his partner, there was evidence that they thought they had concluded their activities for the day. So how does he end up back on the job? Well, because he went to a cell phone store in Elmwood Park to check license plates in the parking lot, and there was no rebuttal to that. There was no evidence that contradicted that. He had, at that point, returned to the scope of his employment, and he would be in the scope of his employment if he were, as he's returning home. From where? The school board meeting? No, from the Elmwood Park. I don't think they believed him. I'm sorry? I don't think they believed him, that he was checking a parking lot with cell phone records. He firstly said he was going to go look at some type of a drug house or something like that, and his supervisor said that's nonsense. Your partner said you signed off and you saw that earlier in the day. I don't think they believed this man, and that's their privilege. The only thing that would have put him still in the scope of his employment, if he had engaged in some police activity after he had left the school board meeting, a school board meeting he shouldn't have taken that car to to begin with. And there's his supervisor said that just isn't so. Said when isn't so, Justice? They said they were finished. They weren't going to any crack house. That his partner had told him that they were through with that earlier in the day, and his partner said he couldn't raise him. That's right. He attempted to get him, and he couldn't raise him. And so he assumed that they weren't going anywhere. I mean, it's... Well, he's got the cell phone off, obviously, at the school board meeting. I don't know what time Liezo tried to communicate with him. But to jump to another point I want to make, and I think this is crucial, Justice, he was engaged, as Caruso said, Agent Caruso said, Respondent's Exhibit or Appellee's Exhibit No. 1, he was engaged in a Melrose Park police investigation. He had gotten a tip from Melrose Park, and Caruso says, well, he hoped that it developed into a federal case, but it wasn't at that point. So it isn't Caruso's prerogative, I think, to tell him don't go there, don't follow up this lead. Has anyone suggested that Romano is not a dual employee of the DEA and the Melrose Park Police Department at that moment? The moment that he's injured while he's investigating the crack house or not? Well, I suppose you can make an argument sensibly that it would be. But the problem that I think we're glossing over here is in reality Liezo, his partner, testified, quote, unquote, that there was nothing going on. He and your client were finished checking on a crack house in Melrose Park. The shift had ended. So why can't the commission credit that? You're saying he was, the claimant's testifying he was still engaged in official business, okay, doing the surveillance. Your claimant's partner says they were done for the day. So what prevents, as a matter of fact or a matter of law, the commission from believing the partner that they were done? And anything that happened after that was not in connection with official duty. Why can't they do that? They can. Did they explicitly do that? Did they say their claim? Yes, they did. They said the commission also finds that the petitioner's work shift was over, he was off the clock, and not in the scope of his employment at the time of the accidental injury. After they quoted Liezo and they quoted Garzuzos, I don't know how to pronounce that, they didn't believe this man. It's just that simple. And that's their privilege. As a traveling employee's shift over before he goes home, he's in an assigned car. Wait a minute. Hold on. He went to his daughter's PTA meeting or whatever it is. You can't contend that was within the scope of his employment. That was not in the scope of his employment. He couldn't use that car for personal purposes. Whenever he was through with work, he just decided to use the car for whatever he felt like using it for and got himself in an auto accident. Okay. That happens. All right. There's a case cited, there's a line of cases cited about traveling employees in a motor vehicle. They leave the scope of their employment, as admittedly Romano did, and they come back in the scope of their employment. There's a check or cap. Counsel, I think what I'm trying to say to you is the commission didn't believe he ever returned to the scope of his employment. They found that to be the case. He wasn't in the scope of his employment. They didn't believe him when he said he went to check license plates. Just that simple. I mean, it's not hard to read between the lines. They did everything but call him a liar in the opinion. Now, I don't know what more they're supposed to do. Credibility is their call. If they believed he was checking license plates, then in that particular case they would have awarded him benefits because he would have been in the scope of his employment. They didn't believe him. Now, do we re-decide this? The arbitrator didn't believe it? All right. On the issue of credibility, let me revert to the arbitrator's decision, which I – which is – it's page 6 of the arbitrator's decision, and it's A16, marked A16, in my brief. Here's what the arbitrator says about credibility. The arbitrator finds that the testimony of Agents Stern and Karounsos was credible as opposed to the testimony of the petitioner and Officer Anthony Lietzo, which was not. The arbitrator finds that Agents Stern and Karounsos are neutral and unbiased witnesses as opposed to the petitioner and Officer Anthony Lietzo. Since when are the agents of a party in this case – although I will argue later that the DEA wasn't the party to the case – but the arbitrator and the commission thought that they were parties to the case? And this arbitrator is saying, well, they're neutral and unbiased, these agents that are sent in, these agents of the defendant who are sent in to testify. I mean, well, first of all, I mean, the arbitrator is not a lawyer, but simple concepts of agency should be understood by anyone who is a hearing officer. How can you say that Stern and Karounsos are neutral and unbiased? All right. It's my contention that there was no defense mounted by the village of Melrose Park. Counsel's firm entered an appearance for the village, true, but there were no witnesses appearing on behalf of the village of Melrose Park. I want to know who from the village of Melrose Park came in and said he was outside the scope of his employment. He never intended to return to his employment at the time of the injury. You know, there's dual employees. Are you segueing into the argument of collateral estoppel? No, I'm not. But that's something you should address, too, before you conclude. Okay. No, I'm not segueing into collateral estoppel. But you did argue there was collateral estoppel against the village, correct? Right. Okay. What I'm saying is there were two employers, a division of the U.S. government, the DEA, and the village. The Illinois Workers' Compensation Commission doesn't have jurisdiction over the DEA. So we didn't file a claim against the DEA. I wouldn't know how to do it, frankly. I filed a claim. We filed a claim against the village of Melrose Park. They didn't come in and defend. Caruso, in his testimony, said that Romano was working a Melrose Park lead, and he hoped it developed into a federal case. What is the relevance of these two agents coming in and testifying? Where was someone from Melrose Park? I could speculate why they didn't bring anyone in from Melrose Park, and that segues into my collateral estoppel issue. Because the police pension board of Melrose Park had already found that he had a duty-related injury and disability as a result of this action. Now, the collateral estoppel, as I read the cases, I mean, I want to preserve that argument. I don't want it waived. But as I read the cases, the cases were used as a defense successfully against the plaintiff, petitioner. I haven't found much where it can be used offensively by the petitioner to close out either an Illinois worker's compensation claim or a pension disability claim. And I wish you would clarify that. Any questions? I reserve my rebuttal, if I may. Counsel, please. Good morning, Your Honors. My name is Brad Breka. I represent the Respondent of the Village of Melrose Park in this matter. I'm asking that the decision of the Circuit Court with regard to the issues of collateral estoppel and the issue that petitioner was not within the course and scope of his employment be affirmed by this Court. We do not believe that they were against the manifest way of the evidence, and therefore, we believe they should be affirmed. As we know, it's within the province of the Commission to judge the credibility of the witnesses and to find the facts. And I just want to reiterate some of the facts that were referenced when Opposing Counsel Mr. Whipple was up here a minute ago. And that's that the credibility and of the credible testimony came from Agent Carunzos and Agent Stern. They did not find the petitioner, Roger Romano, to be credible. They did not find his partner, Agent Leitzel, to be credible. Credible on one issue, whether or not he had returned to his official duties or what? Specifically, Your Honor, with regard to the alleged crack house. There was a number of conflicting statements that they made, the first being one of a couple. Agent Romano testified that he investigated the crack house in lieu of taking a lunch earlier that day. So that he could, or I'm sorry, attended his daughter's school meeting in lieu of taking a lunch earlier that day. Agent Stern said, you know, actually we never took a lunch earlier that day. We just met with, or I'm sorry, Agent Stern said that they did take a lunch earlier that day and then met with a witness. There was conflicting testimony between the two. Specifically, they found him not credible with regard to the intentions of investigating the crack house later on that evening, as been alleged by the petitioner. They found that Agent Carunzos and Agent Stern were more credible on that fact, that there was no investigation, one, that was authorized, and two, that took place that evening. So basically they found he was off the clock. There was nothing further work-related going on. Exactly, Your Honor. That his day, in fact, both him and Agent Stern worked from 9 to 5. And that on, in fact, the date of the accident, his day ended at 5. Now, there was no evidence in the record what took place. There was no evidence presented. There was no evidence rebutted. What took place between 5 and 7? There's no telling what the petitioner was doing during that time. But what they did find was that at 7 o'clock, as has been pointed out, he attended his daughter's school board meeting from 7 to 845, using his vehicle for personal use, which was in violation of his employer's regulations. That's what the, and then following leaving the meeting at 845, the court further found that his testimony regarding stopping by a cell phone store was not credible. As far as the commission was concerned, that never happened. He left the meeting by his own testimony at 845. The accident occurred at 852. That was a finding of fact by the commission, that there was no cell phone store. He simply was returning home following his deviation, personal deviation for attending the school board meeting some four hours after his shift had ended. Now, I want to first look at the issue of traveling employee, and I will address the issue as well of collateral estoppel. But first, with regard to the traveling employee, this issue was argued at every level. This was argued before the arbitrator, and then it was affirmed by the circuit court, or by the commission, and then went up before Judge White, who remanded the case because the commission did not specifically state in their argument that they did not find him to be a traveling employee.  So we had to go back to the commission, who was again briefed, and went back up to the circuit court. The circuit court found that he was a traveling employee. I just wish to emphasize that the issue of traveling employee, the category, the title, is an exception, not the standard. Traveling employees are specific people that are granted an exception that they are required to travel away from home. I just want to emphasize, again, this is the exception. But even if an employee falls into this very narrow exception called the traveling employee, this does not alleviate from him the burden of proving that any accident that occurs was within the course and scope of his employment. We talked about that earlier. You're not disputing that he was a traveling employee, are you? So on what basis are you disputing that? Your Honor, we don't wish to waive that. We do wish to emphasize that the State of Illinois, as far as counsel has searched and I have searched and apparently the circuit court, has never found that a police officer is considered a traveling employee. I will admit that by the definitions that we've seen, it could be seen how he would be categorized. He's not merely a village employee. I mean, a police officer is not normally supposed to be outside the village, but it was contemplated under this assignment. He would be all over the Chicagoland area. It was contemplated he'd be leaving the village boundaries. That's absolutely correct, Your Honor. So how could he not be a traveling employee? Well, Your Honor, then I would be willing to submit on that point at this point that he could be considered a traveling employee. If I refer to your opposing counsel, that doesn't undermine the case, sir, because merely because one is a traveling employee doesn't automatically obviate a finding of a work-related injury. So it's two separate levels. It's absolutely correct, Your Honor, and that's what I believe I argued in my brief as well, was stating that it needs to be within the course and scope of his employment, which the commission correctly found it was not, and the circuit court correctly affirmed this decision. It is the duty of the commission to determine the credibility of the witnesses, to draw reasonable inferences from the testimony, and to determine the weight to be given to the testimony. An employee's injury is only compensable if it arises out of and in the course of employment. Both of these elements must be met for it to be a compensable injury. The test for determining whether an injury to a traveling employee arose out of the course of employment is the reasonableness and foreseeability of the conduct. Well, your position on that is relatively simple, as you have emphasized. The credibility decision is reserved to the commission. They weigh the evidence. They weigh the credibility of the witnesses, the weight to be given. As Justice Hoffman alluded to, it appears that they did not believe the claimant when he testified he was engaging in work-related duties after the school board meeting. That's correct. I think you've emphasized that quite well. What about this collateral estoppel doctrine? Is the pension board and the village, are they in privity? They are not in privity, Your Honor. Again, we have a factual determination made by the commission and affirmed by the court that the pension board and the village in part were separate and distinct entities with no evidence of collaboration between them. It was further found that absolutely no notice was provided to the village prior to the proceeding before the pension board. Well, that's the circuit court's findings. Yes. In all candor, isn't there some conflict in the law between whether or not the pension board and the village could be considered to be in privity? Isn't there some decisions that go both ways? Your Honor, I believe there may be decisions that go both ways. One case may be, if I don't have it directly in front of me, one stating that the pension board was acting as an agent of the city. But I believe the case that's most instructive to us here and the case that was relied upon in the circuit court, the commission, and by the arbitrator is Rhodes. I believe that's the most applicable case stating that the village and, I'm sorry, in that case it was the city, and the pension board were separate and distinct entities. The facts were very similar as they were found here. And again, this was based on the facts presented by a respondent as well as by the evidence of a Lieutenant John Simpson, who was the president of the pension board, stating that the pension funds, the monies, came from sources other than the city. And these are the same facts as in Rhodes that are here, the same findings that are in Rhodes that are in the instant case. The two maintain separate financial books. The pension board has in the past actually sued the village, which Lieutenant Simpson testified to as well, evidencing unique and separate parties, and that the pension fund is regulated by the state of Illinois, the Department of Insurance, whereas the village workers' comp matters are governed by the IWCC. Based upon these findings, the findings of fact made by the commission and affirmed by the circuit court, they found that collateral estoppel did not apply. Furthermore, stating not only that they were distinct parties but also were not in privity, they found that there was no collaboration between the parties. The village's workers' comp insurance insurer was at the time of the accident Reliance Insurance Company. Following that, after Reliance Insurance Company went into liquidation, they were replaced by the Illinois Insurance Guaranteed Fund. At all times during this litigation from the day of the accident up through the pension board hearing to today, the attorney on behalf of both these parties was Daniel Crow, first with Young Crow and Associates and then with Chilton, Embert, Porter, and Young. At no time did counsel from Petitioner's Firm ever give notice to the pension board hearing taking place. There was no notice given to the Illinois Insurance Guaranteed Fund and there was sure no notice given to Respondent's Counsel. Without this, Your Honor, we were not in privity with the village. We had no chance to defend our case at the pension board hearing. Now, that would seem to rule that we, the first two points of this, but even with those first two points being met, that they were separate and distinct enemies and that there was no privity, the third is that there would be no unfair prejudice. And I believe that's what I just touched upon. Essentially, if collateral estoppel is applied, Respondent would be bound by a proceeding which it had absolutely no notice of, was no party to, and had no privity of any of the litigation of that matter at that time and would therefore be prejudiced to a great extent. Based upon these readings, the decision in Rhodes, or based upon these reasons and the decision in Rhodes, Respondent would respectfully request that the issue, the decision by the Circuit Court regarding collateral estoppel is affirmed. If the judges have any questions regarding travel and employee recourse and scope. Thank you, Counsel. Thank you, Judge. Federal please. Justices, if you agree that Romano was a traveling employee, why isn't he in the scope of his employment when he goes home? Drives home. Even agreeing that he was on a detour at his daughter's school board meeting, how does the man get home? He's in an undercover vehicle that is assigned to him by DEA.  The party to this case, the village of Melrose Park, requires him to live within the village. So he's on his way home. He's the eyes and ears of the Melrose Park Police Department on his way home. I don't see how you can say on the one hand that the man's a traveling employee, but going home. So he automatically is back in his official duties when he returns from an excursion and has nothing to do. So his shift, the village employee's shift ends at 6 o'clock. He goes to Great America. He's driving home at midnight and he's back on the clock. He was off the clock when he went to the school board meeting. He was off the DEA's clock. He wasn't doing a DEA investigation. He was an employee of the village of Melrose Park, which I have contended all along. But you presuppose the flaw in the argument is, is that it was true that he was on the clock. The commission found they didn't believe him. He was not on the clock. How does a clock apply to a traveling employee? Well, I mean, if a clock doesn't apply to a traveling employee ever, all traveling employees recover for any injury 24 hours a day. This is not a positional risk state? No. Look, if a guy gets off of work at 5 o'clock at night and doesn't go to his house, but goes out to the local bar and spends half the night there. There are cases like that, aren't there? On the way home from the local bar, he's back on his way home? Is he still a traveling employee? If he's sober, yeah. If he hasn't taken himself out of a... I don't think so, Counselor. All right. Thank you, Counselor. The court will take the matter under advisement for disposition.